[626 NYS2d 446]

In the Matter of JOSE M. PLAZA, Also Known as JOSE E. PLAZA, Also Known as MANUEL PLAZA, Also Known as EMANUEL PLAZA, Appellant, v ESTATE OF SCOTT A. WISSER, Deceased, et al., Respondents.

First Department, April 25, 1995

114

### APPEARANCES OF COUNSEL

*Richard T. Sinrod* of counsel *(Judith Ellen Stone,* attorney), for appellant.

*Karen E. Katzman* of counsel *(Steven D. Roth* and *Arlene Harris* on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* and *Reiner, Reiner & Reiner,* attorneys), for respondents.

### OPINION OF THE COURT

SULLIVAN, J. P.

In this action plaintiff seeks to recover against the estate of his now-deceased companion for decedent's allegedly negligent, deliberate and fraudulent conduct in causing the Human Immunodeficiency Virus (HIV) to be transmitted to plaintiff. Plaintiff also seeks recovery against decedent's parents—in both their individual capacities and as administrators of the estate—alleging, *inter alia,* intentional infliction of emotional distress, a fraudulent conveyance in violation of article 10 of the Debtor and Creditor Law, breach of contract and anticipatory breach of contract.

Plaintiff's version of the facts is as follows: He met decedent on August 12, 1986, and moved in with him approximately two months later. The two continuously lived together in a monogamous relationship until December 17, 1992, when decedent died from AIDS-related complications. Plaintiff's sex-

ual contact with decedent, his first—and only—sexual partner, was the only high-risk activity in which plaintiff engaged. Some weeks after they began to live together decedent told plaintiff that he "had had no other homosexual relationships involving penetration."

Approximately four years after they began living together (in September or October of 1990), decedent developed what looked to plaintiff like a chicken pox pustule on his forehead. Plaintiff suggested that decedent see a physician, but decedent decided to wait a few days and see if it would disappear. When the condition became worse, decedent visited a doctor and told plaintiff afterward that he was "not contagious" and plaintiff "had nothing to worry about." About two weeks later, decedent found out that he tested positive for HIV antibodies and told plaintiff that he was infected with the virus that causes AIDS.

At about the same time, decedent told plaintiff that his former partner, whom he described as a "very wild, promiscuous, person," "killed" him, and that he broke off the relationship because of his former partner's promiscuity. Plaintiff had no reason to believe that decedent, whom he believed to be a healthy person, was HIV positive until decedent advised him of the fact. Plaintiff asserts that decedent's former partner was HIV positive and that decedent knew of this fact before he found out that he himself was HIV positive and withheld the information from plaintiff. Plaintiff remained decedent's partner and became decedent's sole caregiver until he died in December 1992, but never again engaged in any high-risk behavior with him. In or about February 1993, plaintiff tested positive for HIV antibodies and commenced this action on August 23, 1993, approximately six months thereafter.

The amended verified complaint dated November 9, 1993[1] pleads twelve causes of action, the first seven of which are against the estate, with the remaining against decedent's parents in their individual capacity (the eighth) and as coadministrators of the estate (ninth through twelfth). The first and second causes of action allege, respectively, decedent's

1. An earlier amended verified complaint was served on November 8, 1993 and rejected by defendants. There is no merit to plaintiff's contention that the November 8 complaint is the pleading appealed from, since it is clear on this record that defendants rejected service of that complaint, that the motion to dismiss was addressed to the November 9, 1993 complaint and that therefore, the November 9, 1993 complaint is the only pleading which is before the Court.

intentional and negligent infliction of emotional distress in failing to exercise safe sex precautions and exposing plaintiff to and transmitting to him the HIV infection. In the third cause of action, plaintiff alleges that decedent, by failing to inform plaintiff of his probable HIV status and failing to exercise safer sex precautions, negligently transmitted the AIDS virus to plaintiff. The fourth cause of action alleges a battery, in that decedent intentionally failed to inform plaintiff of his HIV status and intentionally engaged in harmful contact with plaintiff, thereby causing plaintiff to become infected with the AIDS virus. The fifth cause of action is based on decedent's fraudulent concealment of the fact that he was infected with the AIDS virus. Plaintiff alleges that after decedent returned from his visit to the doctor, decedent, knowing or having reason to know that he was infected with the AIDS virus, fraudulently told plaintiff that plaintiff "had nothing to worry about" and fraudulently failed to inform plaintiff about the HIV test decedent underwent in order to induce plaintiff to engage in unprotected sexual relations with decedent. The sixth cause of action alleges decedent's fraudulent transmission of the AIDS virus, specifically, that decedent represented to plaintiff that he was healthy when he knew or had reason to know that he was at high risk of being infected with the AIDS virus, thereby intending to induce and inducing plaintiff to have anal intercourse with him. The seventh cause of action alleges a violation of Public Health Law § 2307, which provides that any person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another shall be guilty of a misdemeanor.

The remaining causes of action are against the Wissers, decedent's parents—either in their individual capacity or as coadministrators of the estate. The eighth cause of action alleges the Wissers' intentional infliction of emotional distress for the manner in which they treated plaintiff at decedent's funeral. The ninth cause of action alleges the Wissers' breach of fiduciary duty and intentional infliction of emotional distress based on their conveyance of decedent's condominium apartment in violation of decedent's assurances to plaintiff that he would be allowed to continue residing in the apartment. The tenth cause of action alleges the Wissers' fraudulent conveyance of decedent's real property knowing that plaintiff had a right to remain in the premises. Finally, the eleventh and twelfth causes of action allege, respectively, the

Wissers' breach and anticipatory breach of an agreement to provide financial support for plaintiff.

Plaintiff moved for a preliminary injunction, *inter alia,* to compel the Wissers to make monthly payments to plaintiff and for disclosure of confidential HIV-related information pursuant to Public Health Law § 2785 (2) (a). Defendants cross-moved for a protective order with respect to the confidential medical records of decedent and to dismiss the complaint pursuant to CPLR 3211 (a) (7). The court concluded that plaintiff had failed to make out a valid cause of action against the estate either in negligence, battery, fraud or breach of contract, stating that his concession of knowledge of pertinent information belied his claim that he had been deceived. In addition, the court held that, given the two and a half years that have elapsed since the information was revealed and the six-year term of the relationship, the fraud and battery claims are time barred (*see,* CPLR 213 [8]; 203 [g]; 215 [3]). The court found "[e]qually vague and unenforceable" the claim that the estate is liable for an alleged commitment that plaintiff could continue to reside in decedent's condominium with all expenses paid. It also dismissed the causes of action against decedent's parents and denied as moot plaintiff's motions for disclosure and injunctive relief and defendants' cross motion for a protective order.

██ Plaintiff initially argues that the negligence, battery and fraud causes of action against the estate for the wrongful transmission of the AIDS virus were timely since transmission of the HIV virus constitutes a toxic tort (*see,* CPLR 214-c [2]) and, accordingly, these causes of action did not accrue until plaintiff discovered his injury in February 1993, less than three years prior to the commencement of the action. As to the negligence cause of action, we agree that this claim is controlled by the date of discovery accrual rule of CPLR 214-c and is therefore timely. Insofar as relevant, CPLR 214-c (2) provides that "[n]otwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury * * * caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body * * * must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." This rule has been held to apply to actions to recover for injuries caused by the latent

effects of exposure to AIDS-contaminated blood. *(See, Di Marco v Hudson Val. Blood Servs.,* 147 AD2d 156; *see also, Prego v City of New York,* 147 AD2d 165.) And for purposes of the application of CPLR 214-c (2), it is irrelevant whether the virus was transmitted via blood through a transfusion or via semen as a result of sexual contact. As this Court said in *Di Marco v Hudson Val. Blood Servs.,* "the clear import of the statute, by its own plain language, is that it applies to latent injuries suffered from exposure to *any substance* or combination of substances, in any form" *(supra,* at 161; emphasis in original). Thus, timeliness of this cause of action is controlled by the three-year Statute of Limitations set forth in CPLR 214-c (2), which commenced to run either on the date of plaintiff's discovery of the injury or "the date when through the exercise of reasonable diligence [the] injury should have been discovered."

Contrary to plaintiff's contention, however, CPLR 214-c does not protect his battery claim. As is evident from the quoted language, this rule merely carves out an exception to when the three-year Statute of Limitations applicable to personal injury actions begins to run (subd [2]) and has no application to intentional torts such as battery which are governed by the one-year Statute of Limitations *(see,* CPLR 215 [3]). Since plaintiff was required to commence a cause of action for battery within one year of the date of the nonconsensual physical contact *(ibid.),* and plaintiff concedes that he did not engage in any sexual activity with decedent after decedent told him that he was HIV positive, around October or November of 1990, approximately three years prior to the commencement of this action, plaintiff's battery claim is time barred.

Similarly, since the ameliorative provisions of CPLR 214-c are applicable only to actions to recover damages for personal injury or injury to property, they have no bearing on plaintiff's causes of action based on fraud. Claims based on fraud must be commenced either within six years of the time the fraud is committed, or within two years of the time the fraud is or should have been discovered by the plaintiff, whichever period is longer. (CPLR 213 [8]; 203 [g]; *see also, Schoen v Martin,* 187 AD2d 253, 254.) The action was commenced in August 1993. Thus, the causes of action based on fraud, insofar as they are based upon acts which took place after August 1987, are timely and should not have been dismissed.

■ Defendants assert that plaintiff cannot recover under either a negligence or fraud theory since there are "no facts

alleged to show" that decedent had AIDS or that he knew or had reason to know that he was infected with HIV prior to the time he was diagnosed as HIV positive. These facts, however, are specifically alleged in the complaint, along with allegations that even before decedent was diagnosed as HIV positive, he knew that his prior sexual partner was HIV positive. Such allegations, which, on a motion to dismiss, must be taken as true, are sufficient to withstand the dismissal motion.

Similarly, for purposes of this motion to dismiss, plaintiff has sufficiently alleged facts which demonstrate causation by decedent as well as injury. The allegations that decedent was plaintiff's first and only sexual partner, that plaintiff and decedent engaged in anal intercourse, that they engaged in such relations only until decedent informed plaintiff that he was HIV positive, that plaintiff's blood or bodily fluids never came into contact with defendant's blood or bodily fluids while plaintiff cared for defendant in the weeks and months prior to his death, that plaintiff has never engaged in intravenous drug use or shared needles with other persons under any other circumstances, and that plaintiff has never had a blood transfusion are sufficient to eliminate any means other than decedent's acts and omissions as the cause of plaintiff's injury, which can be presumed merely from plaintiff's contraction of the HIV infection.

The seventh cause of action alleges a violation of Public Health Law § 2307, which provides that "[a]ny person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another shall be guilty of a misdemeanor." While the Public Health Law does not define the term venereal disease, it clearly—although not explicitly—excludes HIV infection from that category. Suffice to say that under the Public Health Law there are entirely separate statutory schemes for HIV-related testing (see, e.g., Public Health Law §§ 2781, 2782) and for the examination of persons suspected of being infected with venereal disease (see, e.g., Public Health Law §§ 2300, 2301, 2302). It is significant that while there are mandatory testing requirements relating to those suspected of being infected with venereal disease (Public Health Law § 2300), persons suspected of being infected with the HIV virus cannot be compelled to undergo testing unless such a test is specifically authorized by State or Federal law (Public Health Law § 2781; see also, Matter of Michael WW., 203 AD2d 763, lv dismissed 83 NY2d 1000).

Accordingly, even if the allegations are deemed sufficient to state a claim that decedent knew that he was HIV positive when he engaged in sexual intercourse with plaintiff, this cause of action was properly dismissed.

■ While we are reinstating certain causes of action against the estate, we agree with the IAS Court that the causes of action against the Wissers, both in their individual capacity and in their capacity as coadministrators, should be dismissed.

The eighth and ninth causes of action allege intentional infliction of emotional distress, based, respectively, on the Wissers' alleged conduct in preventing plaintiff from openly attending decedent's funeral and on their alleged refusal to honor decedent's commitment that plaintiff could continue living in decedent's condominium after the latter's death. While these allegations reflect conduct which may have caused distress and anxiety to plaintiff, they can hardly be said to allege conduct which is " ' "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ' " *(Howell v New York Post Co.,* 81 NY2d 115, 122, quoting *Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303, quoting Restatement [Second] of Torts § 46, comment *d.)*

In the tenth cause of action, plaintiff alleges that the Wissers, in their capacity as coadministrators, fraudulently conveyed decedent's real property in violation of article 10 of the Debtor and Creditor Law and that plaintiff thereby suffered severe emotional distress. Plaintiff specifically alleges that defendants conveyed decedent's real property knowing that plaintiff had a right to remain in the premises pursuant to an agreement between plaintiff and decedent and that by conveying said property the Wissers committed acts of constructive fraud. Plaintiff also alleges that at the time the Wissers applied to the Surrogate's Court for an order permitting them to sell the real property, they were aware that plaintiff had a right to maintain a tort action against the estate and was therefore a creditor of the estate. These allegations are insufficient to state a claim for relief for a variety of reasons. First of all, even if plaintiff is deemed a creditor of the estate, the complaint fails to allege that the conveyance was fraudulent since there is no claim that the real property was conveyed without fair consideration *(see,* Debtor and Creditor Law §§ 273, 275) or that the Wissers conveyed the property with "actual intent" to defraud (Debtor

and Creditor Law § 276). In addition, the alleged agreement between plaintiff and decedent was an oral one, which is unenforceable since it is barred by the Statute of Frauds (General Obligations Law § 5-701 [a] [1]; § 5-703 [3]).

Plaintiff's complaint of fraud is also based on allegations that when the Wissers filed a petition in the Surrogate's Court on June 23, 1993, for an order permitting the sale of decedent's real property and collection of proceeds (see, SCPA 1904), they omitted plaintiff's name as an "interested person" even though they knew or should have known that plaintiff had an "interest in the proceeding for the sale of the real property as a creditor of the Estate." While "process shall issue to all persons interested" if the court entertains a proceeding for the disposition of real property (SCPA 1904 [2]), plaintiff is not a "person interested," since he is not "entitled or allegedly entitled to share as beneficiary in the estate or the trustee in bankruptcy or receiver of such person" (SCPA 103 [39]).[2] Thus, plaintiff was not entitled to be served with process of the application for the sale of decedent's real property and the Wissers' failure to issue such process cannot serve as the basis for a claim that their conveyance of the property was fraudulent.

It follows that plaintiff's claim that the Wissers intentionally inflicted emotional distress upon plaintiff by fraudulently conveying the property must also fail. In any event, the conduct alleged is not so extreme or outrageous as to constitute such a claim. (See, e.g., Howell v New York Post Co., supra, 81 NY2d 115, 121-122; Fischer v Maloney, 43 NY2d 553, 557.)

In view of plaintiff's argument, albeit to no avail, that we should consider the November 8 complaint rather than the November 9 complaint as the relevant pleading on appeal,[3] we note that the November 8 complaint suffers from the same pleading defects as the November 9 complaint; neither complaint sets forth a valid cause of action against the Wissers based on a fraudulent conveyance or for the intentional infliction of emotional distress.

---

2. SCPA 103 (39) also provides that "[a] creditor shall not be deemed a person interested."

3. According to plaintiff, all the causes of action are "exactly the same" in the November 8, 1993 and November 9, 1993 amended complaints "except for the original 9th cause of action which substantively changed the *foundation* upon which the claim of Intentional Infliction Of Emotional Distress against the Wissers was based." (Emphasis in original.)

■ Similarly deficient in stating claims for relief are the eleventh and twelfth causes of action, which seek to hold the Wissers responsible for plaintiff's support on theories of breach and anticipatory breach of their agreement to support plaintiff. Plaintiff refers to alleged oral representations and to two letters, copies of which are included in the record. These allegations fail to establish the existence of an enforceable contract between the parties since any oral agreement is barred by the Statute of Frauds and neither of the letters upon which plaintiff relies indicates either an agreement to support plaintiff indefinitely or sufficient consideration to support such an agreement. The twelfth cause of action also includes allegations that the Wissers induced detrimental reliance on their agreement to provide plaintiff with financial support. In the absence of a "clear and unambiguous promise * * * and an injury sustained by the party asserting the estoppel by reason of his reliance," these allegations are insufficient to state a claim for promissory estoppel. (*Ripple's of Clearview v Le Havre Assocs.*, 88 AD2d 120, 122, *lv denied* 57 NY2d 609.) Since the IAS Court was correct in dismissing the causes of action against the Wissers, it properly denied as moot plaintiff's motion for a preliminary injunction.

■ Finally, since we are reinstating certain causes of action, we address plaintiff's motion for disclosure of decedent's confidential HIV-related information and defendants' cross motion for a protective order, which the IAS Court denied as moot. Public Health Law § 2785 provides, in pertinent part, that "no court shall issue an order for the disclosure of confidential HIV related information" (subd [1]), except that "[a] court may grant an order for disclosure of [such] information upon an application showing: (a) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding" (subd [2]). The question in this case is whether this provision overcomes the physician-patient privilege, which prohibits disclosure of any information acquired by a physician "in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." (CPLR 4504 [a]; *see also, Dillenbeck v Hess*, 73 NY2d 278, 284.) A plain reading of the Public Health Law provision, as well as logic and fairness, compel a conclusion that it supersedes the physician-patient privilege.

There is no basis in the statutory language itself for imposing the limitation urged by defendants. It clearly and unambiguously—and without limitation—provides that, under cer-

tain circumstances, a court may order the disclosure of confidential HIV-related information. "[W]here the Legislature in enacting a statute utilized general terms, and did not, either expressly or by implication, limit their operation, the court will not impose any limitation." (McKinney's Cons Laws of NY, Book 1, Statutes § 114; see also, §§ 94, 232, 234.) Once the court has determined that there exists a "compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding" (Public Health Law § 2785 [2] [a]), its inquiry is at end.

We note that while article 27-F of the Public Health Law, of which section 2785 is a part, was intended to preserve confidentiality of HIV-related information to encourage voluntary HIV testing (L 1988, ch 584, § 1), these considerations are not implicated in this case, where the medical records are those of a deceased person.

We also note that to deprive a plaintiff of the ability to obtain disclosure of these records would, in many—if not most —cases, foreclose any possibility of recovery. This outcome would run counter to the principle of requiring the wrongdoer to compensate persons who have been injured by his or her wrongful conduct and to the policy of protecting both individuals and the public at large from the spread of HIV infection.

While defendants argue that plaintiff does not allege any need for decedent's medical records—defendants have not yet answered the complaint—it is clear that even at this stage of the proceedings, there is a "compelling need" for disclosure of decedent's confidential HIV-related information, since it is necessary to prove that decedent was infected with the AIDS virus and that he knew or should have known that he was infected with the virus when he allegedly exposed plaintiff to it. (See, Martinez v Brazen, 60 USLW 2691, 1992 WL 93245 [SD NY, Apr. 22, 1992, Patterson, J.].)

Accordingly, the order of the Supreme Court, New York County (Carol Huff, J.), entered March 8, 1994, which, inter alia, granted defendants' cross motion to dismiss the amended complaint and denied as moot plaintiff's cross motion to compel disclosure of decedent's confidential HIV-related information pursuant to Public Health Law § 2785 (2) (a), should be modified, on the law, to reinstate the second, third, fifth and sixth causes of action in the amended complaint and to grant plaintiff's motion for disclosure of confidential HIV-related information, and, except as thus modified, affirmed, without

costs and disbursements. Motion seeking to strike portions of plaintiff's reply brief granted to the extent of striking the specific factual allegations in Point II.

ROSENBERGER, WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered March 8, 1994, which, *inter alia,* granted defendants' cross motion to dismiss the amended complaint and denied as moot plaintiff's cross motion to compel disclosure of decedent's confidential Human Immunodeficiency Virus (HIV)-related information pursuant to Public Health Law § 2785 (2) (a), modified, on the law, to reinstate the second, third, fifth and sixth causes of action in the amended complaint and to grant plaintiff's motion for disclosure of confidential HIV-related information, and, except as thus modified, affirmed, without costs and disbursements. Motion seeking to strike portions of plaintiff's reply brief granted to the extent of striking the specific factual allegations in Point II.