Dear Representative Franklin:
You have requested a legal opinion from the attorney general's office regarding the responsibility, accountability, and legal obligation of HIV/AIDS service organizations and the surveillance officials of the Louisiana Department of Health and Hospitals (DHH) in prevention methods they use (or fail to use) in attempting to stop the spread of the acquired immunodeficiency syndrome (AIDS) virus. You have a constituent who is concerned about instances when DHH officials and AIDS service organizations (case managers, etc.) become aware of a client who, after being educated in how the disease is spread and what does and does not constitute high risk behavior, continues to expose the unknowing public to the disease through his or her blatant and aggressive high risk behavior.
Your constituent explained that a person was regularly and intentionally exposing others to the AIDS virus through sexual contact without the knowing and lawful consent of the victims and that this person had, in fact, thereby infected another with the virus. Your constituent further explained that the victim, because she did not know that the person with whom she was having sexual contact had AIDS and that she would likely get it through such sexual contact, did not know that she had indeed contracted the AIDS virus and that, consequently, she almost died when she developed pneumonia which, even with medical treatment, would not resolve as it should have. Your constituent's concern is that public health officials might have been aware of her sexual partner's deliberate high risk behavior endangering others and did nothing to warn either the public or the females with whom he was having sexual contact (without their knowing *Page 2 
consent) or to suggest to such females that they should get tested for the HIV/AIDS virus.
Such deliberate behavior by the person who was intentionally spreading the AIDS virus is criminal in Louisiana. See R.S. 14:43.5, subsections "A" and "E(1)" of which read,
 A. No person shall intentionally expose another to any acquired immunodeficiency syndrome (AIDS) virus through sexual contact without the knowing and lawful consent of the victim.
 * * * E.(1) Whoever commits the crime of intentional exposure to AIDS virus shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
 * * *
Your constituent related that eventually this person was arrested for this crime and that the local newspaper publicized the arrest and the fact that he had AIDS. But she further said that some of the local public health officials were aghast that such publicity disclosed and revealed his HIV/AIDS status, which would otherwise be kept confidential.
Your specific questions are as follows:
 Do health department officials have an obligation to notify the public or law enforcement, in the event that a client continues to engage in high-risk behavior, exposing the public to the disease without their informed consent?
 Do AIDS Service Organizations have an obligation to notify the public or law enforcement officials in the event that they have a client that they know are continuing to engage in high risk behavior without the informed consent of those whom they expose?
 If health department officials and/or AIDS service organizations are obligated to report habitual high risk behavior to the public or Police Department, does this remove any liability on the organizations with regards to confidentiality of the client and their HIV status?
 If Health Department Officials or AIDS service organizations do not appropriately report high risk behavior to the proper authorities, are they in any way liable for subsequent exposure of the public, by the client, in the event that the client infects someone else? *Page 3 
This office provides legal defense to the State of Louisiana, the state treasury, state departments, and usually their officials when they are sued by private persons for civil damages. Our experience with governmental liability over the years has caused us to follow a policy of not publishing opinions on the civil liability of the state or its departments and officials. Any opinion indicating possible liability of the state or its departments and officials will likely be used by the bar and courts as an admission in favor of the plaintiff suing the state. On the other hand, if we say the state, its departments, and officials are not liable for civil damages, the plaintiff-side personal injury bar of attorneys, the judges, and juries simply ignore the opinion as self-serving. For this reason, we cannot answer, in a published opinion, your specific questions as to governmental liability; if your constituent thinks that the victim of the person who intentionally exposed such victim to the AIDS virus by sexual contact, without having first revealed his AIDS status and thereby obtaining the victim's knowing and informed consent, has a cause of action against state public health personnel for civil damages, then the constituent should advise such victim to see a private attorney, receive a legal analysis of the victim's rights, and obtain, if warranted, legal representation to file a civil damages lawsuit against such public health officials and their employer (probably the parish or the state). [It is important for your constituent and the victim of the intentional exposure to AIDS to know that most private attorneys would consider taking the case on a contingency fee basis, whereupon the victim in this matter would have to pay no upfront fees to the attorney whatsoever.] Regardless, it does seem likely that the private person who intentionally gave the victim the AIDS virus without her knowing consent is himself liable for civil damages to his victim, through R.S.14:43.5(A) read together with Civil Code article 2315. Such result would also appear to be the same in a common law jurisdiction. See, for example, Plaza v. Estate of Wisser, 626 N.Y.S.2d 446 (N.Y.A.D. 1 Dept. 1995). However, even though our policy is not to say, in a published opinion, whether the state or its departments and officials are liable for civil damages, we will discuss these issues in this opinion insofar as they suggest possible future legislation that you might be interested in.
We must begin with federal law, because generally federal law pre-empts any conflicting or inconsistent state laws on the same subject matter, in one or more of the following ways: The Constitution of the United States of America, as interpreted by the Supreme Court of the United States, pre-empts all federal and state laws and state constitutional provisions, because it sits atop the hierarchy of all laws in this nation. Any federal or state law or state constitutional provision which is in irreconcilable conflict with the U.S. Constitution must yield to that constitution. Marbury v. Madison, 5 U.S. (Cranch) 137, 2 L.Ed. 60 (1803). Because the U.S. Constitution says that federal law is the supreme law of the land, federal law pre-empts state law and state constitutional provisions when Congress has expressly so provided, when Congress intends federal law to "occupy the field" of laws on a specific topic, and when and to the extent that state law conflicts with any federal statute. American Steel Erectors, Inc. v.Local Union No. 7, International Association of Bridge, Structural,Ornamental Reinforcing Iron Workers, 536 F.3d 68,84 (1st Cir. 2008). *Page 4 
Two federal provisions have some effect on this situation described by your constituent: The "free press" clause of the First Amendment to the Constitution of the United States of America guaranteeing to every citizen the right to free publication and the Health Insurance Portability Accountability Act of 1996 (HIPAA).
The reason that the "free press" clause comes into play is that your constituent explained that when the criminal defendant was arrested for violating R.S. 14:43.5, the news media in the local community published his identity and necessarily his AIDS status, along with the other circumstances surrounding the alleged crime and arrest. Generally, prosecution for adult criminal behavior is a public matter on the face of the public record. Therefore, it was within the rights of the news media to publish this story of the person with the AIDS virus. See Doev. Alton Telegraph et al., 805 F.Supp. 30 (USDC, C.D., III., 1992);In re Application of Multimedia KSDK, Inc., 581 N.E. 2d 911 (III. App. 5th Dist. 1991); and 37A Am. Jur. 2d "Freedom of Information Acts" § 36.
When Congress enacted HIPAA, it secondarily provided statutory authorization for the Secretary of Health and Human Services (HHS) to promulgate regulations pertaining to medical privacy. The Secretary did promulgate such regulations, which are sometimes referred to as the "Privacy Rule." They are codified at 45 CFR Parts 160 and 164.45 CFR § 160.203
relates to pre-emption of state law and reads, in pertinent part,
Sec. 160.203 General rule and exceptions.
 A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:
 (a) A determination is made by the Secretary under Sec. 160.204 that the provision of State law:
 (1) Is necessary:
 * * * (iv) For purposes of serving a compelling need related to public health, safety, or welfare, and, if a standard, requirement, or implementation specification under part 164 of this subchapter is at issue, if the Secretary determines that the intrusion into privacy is warranted when balanced against the need to be served; . . .
 * * * *Page 5 (b) The provision of State law relates to the privacy of health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.
 (c) The provision of State law, including State procedures established under such law, as applicable, provides for the reporting of disease or injury, child abuse, birth, or death, or for the conduct of public health surveillance, investigation, or intervention.
 * * * 45 CFR § 164.502(a) contains the general health information privacy rule, as follows:
 (a) Standard. A covered entity [a health care plan, a health care clearing house, a health care provider who transmits health information electronically, and their business associates] may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter.
The question as to whether a public health officer or public health facility (and its employees) is "a covered entity" is a difficult question to answer. The U.S. Department of Health and Human Services maintains on the web "covered entity" charts which shed light on such a determination; it is in the form of adobe reader documents and is located at "http://www.cms.hhs.gov/HIPAAGenlnfo/Downloads/CoveredEntitycharts.pdf" as of the end of April in 2009. Probably the most telling question is whether such a public officer or facility furnishes, bills, or receives payment for health care in the normal course of its business. A state public hospital or clinic that furnishes health care and bills or gets Medicaid to pay for at least some of such services would probably be "a covered entity." But a public health officer who simply monitors or tracks epidemics and contagious diseases as they progress through the population probably is not "a covered entity," unless he is a "business associate" of a covered entity [for example, in accessing the record of health care information of health care services furnished to an identified individual by such hospital or clinic]. Nevertheless, for purposes of sponsoring future valid legislation under the Privacy Rule, it might be wise to analyze the legislation as though the state officer or facility were indeed "a covered entity," in case a close question as to same arises in the future.
45 CFR § 164.512 reads, in pertinent part,
Sec. 164.512 Uses and disclosures for which an authorization or
opportunity to agree or object is not required.
 A covered entity may use or disclose protected health information without the written authorization of the individual, as described in Sec. *Page 6 
 164.508, or the opportunity for the individual to agree or object as described in Sec. 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.
 (a) Standard: Uses and disclosures required by law.
 (1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.
 (2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.
 (b) Standard: uses and disclosures for public health activities-
 (1) Permitted disclosures. A covered entity may disclose protected health information for the public health activities and purposes described in this paragraph to:
 * * * (iv) A person who may have been exposed to a communicable disease or may otherwise be at risk of contracting or spreading a disease or condition, if the covered entity or public health authority is authorized by law to notify such person as necessary in the conduct of a public health intervention or investigation; . . .
 * * *
Other provisions of this section of the "Privacy Rule" provide for disclosures, in certain circumstances and upon certain conditions, for administrative, civil, and criminal investigations, in response to court orders, and in compliance with subpoenas and discovery requests during judicial proceedings.
Hence, the federal "Privacy Rule" would appear to allow the disclosure that a person has the AIDS virus to a potential victim of the crime of intentional exposure to the AIDS virus (R.S. 14:43.5) committed by that person, when such victim is at risk of contracting the AIDS virus from such person, if state law allowed such disclosure. This matter is *Page 7 
covered by state law in Part XLI of Chapter 5 of Title 40 of the Revised Statutes of 1950 containing R.S. 40:1300.11-1300.15.
As the title to this Part of the Revised Statutes states, these state laws cover the topic of "Confidentiality of HIV Test Results." Although they focus on the confidentiality of the test results for the HIV virus, as a practical matter, they also govern most, if not all, cases dealing with the confidentiality of the mere HIV/AIDS status of persons, since the only way for anyone to be certain that a person even has the HIV/AIDS virus is as a result of an HIV/AIDS test.
R.S. 40:1300.14 contains the basic rule, as follows:
 § 1300.14. Confidentiality of HIV test result; disclosure
 A. Except as otherwise provided by law, no person who obtains, retains, or becomes the recipient of confidential HIV test results in the course of providing any health or social service or pursuant to a release of confidential HIV test results may disclose such information pursuant to a written authorization to release medical information when such authorization contains a refusal to release HIV test results.
 B. Notwithstanding the provisions of Subsection A, HIV test results may be released to the following:
 * * * (6) A federal, state, parish, or local health officer when the disclosure is mandated by federal or state law.
 * * * (8) Any person to whom disclosure is ordered by a court of competent jurisdiction.
 * * * C. A state, parish, or local health officer may disclose confidential HIV test results when:
 (1) Disclosure is specifically authorized or required by federal or state law.
 (2) Disclosure is made pursuant to a release of confidential HIV test results.
 (3) Disclosure is requested by a physician pursuant to Subsection E of this Section. *Page 8 
 (4) Disclosure is authorized by court order.
 D. No person to whom confidential HIV test results have been disclosed pursuant to this Part shall disclose the information to another person except as authorized by this Part, provided, however, that the provisions of this Subsection shall not apply to the individual or to a natural person who is authorized by law to consent to health care for the individual.
 E. (1) A physician may disclose confidential HIV test results under all of the following conditions:
 (a) Disclosure is made to a contact, or to a public health officer for the purpose of making the disclosure to said contact.
 (b) The physician reasonably believes disclosure is medically appropriate, and there is a significant risk of infection to the contact.
 (c) The physician has counseled the patient regarding the need to notify the contact, and the physician reasonably believes the patient will not inform the contact.
 (d) The physician has informed the patient of his or her intent to make such disclosure to a contact and has given the patient the opportunity to express a preference as to whether disclosure should be made by the physician directly or to a public health officer for the purpose of said disclosure. If the patient expresses a preference for disclosure by a public health officer or by the physician the physician shall honor such preference.
 (2) When making such disclosures to the contact, the physician or public health officer shall provide or make referrals for the provision of the appropriate medical advice and counseling for coping with the emotional consequences of the knowledge of the information and for alteration of behavior to prevent transmission or contraction of HIV infection. The physician or public health officer shall not disclose the identity of the patient or the identity of any other contact. A physician or public health officer making a *Page 9 
notification pursuant to this Subsection shall make such disclosure in person, except where circumstances reasonably prevent doing so.
 (3) A physician shall have no obligation to identify or locate any contact.
 * * *
For purposes of the law above, R.S. 40.1300.12(C) defines the wordcontact as follows:
 C. "Contact" is a sex-sharing or needle-sharing partner, a person who has had contact with blood or body fluids to which universal precautions apply through percutaneous inoculation or contact with an open wound, non-intact skin, or mucous membrane, or a person who has otherwise been exposed to an HIV infected person in such a way that infection may have occurred as defined by the Department of Health and Hospitals regulations based upon Center for Disease Control guidelines.
R.S. 40:1300.15 provides for court authorization for disclosure of confidential HIV test results and describes the circumstances under which a [state] court of competent jurisdiction may order the disclosure of the otherwise confidential information of the status of a person as having the HIV/AIDS virus.
As can be seen from reading R.S. 40:1300.14(C)(3) and (E) above, when a person with the HIV/AIDS virus has intentionally exposed another to the HIV/AIDS virus in a manner in which infection of such virus would likely pass to that other person without that other person's knowing and lawful consent, the person with the HIV/AIDS virus has therebyimplicitly waived his right to maintain the confidentiality of his HIV/AIDS status, at least insofar as disclosure and notice to such other person is concerned. As to possible future legislation, perhaps the law could provide for an explicit statement to that effect to emphasize and clarify to persons with the HIV/AIDS virus that they clearly lose the right to confidentiality if they engage in intentionally exposing others to infection of the virus.
Where R.S. 40:1300.14 authorizes the disclosure to a sexual partner of a person with the HIV/AIDS that that person has the virus, it uses the word may. R.S. 1:3 provides that the word may is permissive and that the word shall is mandatory. Therefore, while a physician or a health officer is authorized to make the disclosure to a contact of a person with the HIV/AIDS virus in some circumstances, it imposes no legal obligation to do so. Your constituent might request you to sponsor legislation to make it a legal obligation by simply changing the wordmay to the word shall in these laws on disclosure of confidential HIV/AIDS information. However, such a change might create unwarranted liability on local and state government, since a public health officer would not probably know the full circumstances of the "obtaining of knowing and lawful consent" of the sex partner by the person with the HIV/AIDS virus and, in order to decide whether to make the disclosure, would, under threat of civil damages, be unfairly *Page 10 
forced, as a non-lawyer, to make an almost impossibly complicated legal determination whether the "knowing and lawful consent" (all of the facts about which he may be ignorant) was adequate or inadequate in the eyes of the law. If future legislation would place any heavier burden on health officers to make such disclosures to third persons, we suggest that it also contain an immunity clause similar to the one in Connecticut General Statutes § 19a-584 as reported in Lampart v.State, 1995 WL 643152 (Conn.Super., 1995) [not published in A.2d reporter] or at least explicitly say that no civil damages may be imposed on such public health officer or his governmental employer for lack of success in the matter.
We trust that this opinion has adequately answered your questions regarding any possible future legislation that you are thinking of proposing for your constituent and also trust that your constituent advises the victim of the violation of R.S. 14:43.5 to seek the help of a private attorney who will charge no upfront fees.
If you have any further questions regarding this matter, please do not hesitate to contact us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:__________________________ THOMAS S. HALLIGAN Assistant Attorney General
 JDC/TSH/sfj