The CHASE MANHATTAN BANK, N.A., Plaintiff,

v.

T & N PLC (formerly known as Turner & Newall PLC and Turner & Newall Limited), Defendant and Third–Party Plaintiff,

v.

SKIDMORE, OWINGS & MERRILL and Turner Construction Company (Inc.), Third–Party Defendants.

No. 87 Civ. 4436 (JGK).

United States District Court, S.D. New York.

Oct. 18, 1995.

Kent T. Stauffer, Robert R. Elliot III, Janis G. White, Michael A. O'Connor, The Chase Manhattan Bank, N.A. Litigation Division, New York City, Arthur L. Liman, Martin Flumenbaum, Eric S. Goldstein, Robert N. Kravitz, Jay K. Musoff, Adam C. Silverstein, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Paul J. Hanly, Jr., Kenneth E. Warner, Blake Perkins, Charles E. Boulbol, Jayne Conroy, Michael T. Zimmerman, Coblence & Warner, New York City, for defendant.

### OPINION AND ORDER

KOELTL, District Judge:

The Chase Manhattan Bank, N.A. ("Chase") brought this action seeking to recover the costs of abatement and removal of Sprayed Limpet Asbestos ("SLA") fireproofing manufactured by the defendant T & N plc ("T & N") and installed at One Chase Manhattan Plaza ("One CMP"), a building owned by Chase. Chase asserts causes of action for breach of express and implied warranty, negligence, strict liability, fraud, restitution, indemnity, and nuisance, and claims compensatory damages in excess of $100 million, punitive damages of $100 million, costs and attorney's fees, and such other relief as the Court may deem proper. Chase commenced this action in June 1987 during the one-year period provided for commencement of otherwise time-barred claims pursuant to the Toxic Tort Revival Act, 1986 N.Y.Laws, ch. 682, § 4 (the "Revival Act"). T & N now moves for summary judgment on each and every cause of action on various grounds.

For the reasons that follow, T & N's motion is granted in part and denied in part.

### I.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

T & N moves for summary judgment on Chase's causes of action for breach of ex-

press and implied warranty. T & N argues that the breach of warranty claims are time-barred because they accrued on the date of delivery of the Sprayed Limpet Asbestos fireproofing and are not revived by the Toxic Tort Revival Act.

■ Under New York law, U.C.C. § 2–725 governs causes of actions for breach of warranty for the sale of goods. *Heller v. U.S. Suzuki Motor Corp.,* 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132, 133, 477 N.E.2d 434, 435 (1985). Section 2–725 provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.Y.U.C.C. § 2–725. Where there is no allegation that any warranty of future performance has been made, accrual based on discovery of the breach is inapplicable, *see Nassau Roofing & Sheet Metal Co., Inc. v. Celotex Corp.,* 74 A.D.2d 679, 681, 424 N.Y.S.2d 786, 788 (3d Dep't 1980); *see also Long Island Lighting Co. v. IMO Indus. Inc.,* 6 F.3d 876, 888 (2d Cir.1993) ("Section 2–725(2) provides that unless a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, a breach of the warranty occurs when tender of delivery of the goods is made."); *Rosen v. Spanierman,* 894 F.2d 28, 31–32 (2d Cir.1990), and a cause of action for breach of warranty must be commenced within four years of delivery of the goods. *Heller,* 64 N.Y.2d at 410, 488 N.Y.S.2d at 133, 477 N.E.2d at 435; *Tavares v. Hobart Waste Compactor, Inc.,* 151 A.D.2d 251, 252, 542 N.Y.S.2d 170, 171 (1st Dep't 1989) ("A cause of action against a manufacturer or distributor accrues on the date that

the party charged tenders delivery of the product.").

New York applies § 2–725 to cases involving claims of breach of warranty against manufacturers of asbestos-containing products. In *888 7th Ave. Assoc. Ltd. Partnership v. AAER Sprayed Insulations, Inc.,* 199 A.D.2d 50, 51, 605 N.Y.S.2d 25, 25 (1st Dep't 1993), the Appellate Division affirmed the dismissal of warranty causes of action under § 2–725 where delivery was made no later than 1970 and the suit was commenced in 1990. *See id.; 888 7th Ave. Assoc. Ltd. Partnership v. AAER Sprayed Insulators, Inc.,* N.Y.L.J., Mar. 10, 1992, at 24 (Sup.Ct. N.Y.Co. Mar. 7, 1992). *See also Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co.,* 864 F.Supp. 643, 647 (W.D.Ky.1994) (dismissing asbestos fireproofing property damage claims for breach of warranty, citing cases in accord).

In *Port Authority of New York and New Jersey v. Allied Corp.,* 91 Civ. 0310, 1995 WL 771399 (S.D.N.Y. Mar. 29, 1995), Judge Brieant applied New York law and dismissed breach of warranty claims for asbestos abatement and removal costs as time-barred under § 2–725. In *Port Authority* it was undisputed that there were no deliveries of any asbestos-containing products after June 1983, and because the action was commenced in June 1987, all of the breach of warranty claims had accrued over four years before and were therefore time-barred. *See id.*

In the present case, Chase alleges that the SLA was installed in One CMP beginning in or about 1959. (*See* Am.Compl. ¶ 27.) Chase disputes that all delivery of SLA was completed in 1959, asserting that delivery "continued into the 1960's." (Pl.'s 3(g) Stmt. ¶¶ 13, 22.) Even assuming that the term "1960's" includes the entire decade, the breach of warranty claims would have accrued no later than December 31, 1969.[1] Be-

cause the four-year statute of limitations would have run by 1975, the breach of warranty claims are time-barred.

Chase argues that the Toxic Tort Revival Act applies to the breach of warranty claims and revives them in spite of the running of the limitations period. The Toxic Tort Revival Act revives "every action for personal injury, injury to property or death caused by the latent effects of exposure to ... asbestos ... within property which is barred as of [July 1, 1986]...." 1986 N.Y.Laws, ch. 682, § 4. Such actions were revived for one year and it is undisputed that, if these claims were revived by the Toxic Tort Revival Act, they were timely filed in this action which was commenced in June 1987. There is no express provision in the Revival Act, however, that includes claims for breach of warranty or breach of contract. Because the warranty claims are neither personal injury claims nor claims for death, for Chase to prevail, a breach of warranty claim must be included within the term "injury to property."

There are no reported decisions by a New York State court indicating whether the Toxic Tort Revival Act revives breach of warranty claims. The issue was not reached by Judge Sklar in *888 7th Ave.* because the suit there was commenced in 1990 and was not a Revival Act suit.

A federal court sitting in diversity must look to the decisional law of the forum state and the state constitution and statues. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 119 (2d Cir.1994). Where the substantive law of the forum is ambiguous or uncertain, the federal court must strive to predict how the highest court of the forum

---

1. Prior to adoption of the U.C.C. in 1964, New York applied a six-year statute of limitation to warranty claims, raising the question of whether a six-year limitations period would apply if the last delivery of SLA occurred prior to 1964. *See Bulova Watch Co., Inc. v. Celotex Corp.,* 46 N.Y.2d 606, 610 & n. 2, 415 N.Y.S.2d 817, 819 & n. 2, 389 N.E.2d 130 (1979) (applying six-year limitations period where deliveries occurred prior to 1964); *see also* N.Y.U.C.C. § 2–725(4) ("This section does not ... apply to causes of action which have accrued before this Act becomes effective [September 27, 1964]."). If the last delivery of SLA had occurred before the U.C.C. was effective, the six-year statute of limitations would have run before 1970. Because Chase's claims for breach of warranty would be time-barred in either case, there is no need to resolve the factual issue of when during the 1960s the final delivery of SLA was made.

state would resolve the issue. *Travelers*, 14 F.3d at 119; *In re Eastern and Southern Districts Asbestos Litig.*, 772 F.Supp. 1380, 1388–91 (E. & S.D.N.Y.1991) (Weinstein, J.), *rev'd on other grounds sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992). Decisions of the Appellate Division "are entitled to persuasive, if not decisive consideration." *Sphere Drake Ins. Co. v. P.B.L. Entertainment, Inc.*, 30 F.3d 21, 23 (2d Cir.1994), *vacated on other grounds*, 52 F.3d 22 (2d Cir.1995) (citation omitted). As Judge Weinstein explained:

> [A] federal district court will consider, just as a well-advised state court would, the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the New York Court of Appeals would resolve the questions presented.

*In re Eastern and Southern Districts Asbestos Litig.*, 772 F.Supp. at 1391.

Judge Brieant in the *Port Authority* case concluded that the Toxic Tort Revival Act did not revive breach of warranty claims in an asbestos removal action:

> Plaintiff's reliance on the Toxic Tort Revival Act is also misplaced. That statute revived for one year from July 30, 1986 actions for personal injury, injury to property, or wrongful death occurring as the result of exposure to certain toxic substances, including asbestos. As previously noted, plaintiff's action was commenced in June 1987. Damage actions for breach of warranty are not actions for personal injury, injury to property or wrongful death, within the meaning of the Toxic Tort Revival Act. The term "injury to property" is defined in General Construction Law § 25–b, a prior statute, as "an actionable act, whereby the estate of another is lessened, *other* than a personal injury, *or the breach of a contract.*" (Emphasis added). Warranty claims are based on breach of contract, and not tort. Accordingly, the Toxic Tort Revival Statute is not a basis to resurrect plaintiffs' contractual warranty claims.

*Port Authority*, No. 91 Civ. 0310, at 5–6. The opinion of another Judge of this Court is persuasive, and an independent review of the terms of the Toxic Tort Revival Act and New York decisional law with respect to the phrase "injury to property" leads this Court to agree with Judge Brieant.

The question at the outset is whether a claim for breach of warranty alleging consequential damages to property falls within the term "injury to property" as used in the Revival Act. The term "injury to property" is itself defined under New York law as "an actionable act, whereby the estate of another is lessened, *other than* a personal injury, or the breach of a contract." N.Y.Gen. Constr.L. § 25–b ("GCL § 25–b") (emphasis added). Therefore, if a breach of warranty claim for property damages is to be included within the meaning of the phrase "injury to property" and thereby be eligible for revival under the Revival Act, such a claim must not be an action for either personal injury or breach of a contract. Because the warranty claim asserted by Chase is not an action for personal injuries, the crucial question is whether it is a breach of contract action within the meaning of § 25–b. New York courts have interpreted claims for breach of warranty as breach of contract actions within the meaning of GCL § 25–b. Therefore, New York courts would find that a breach of warranty action is not an action for injury to property and would not be revived by the Toxic Tort Revival Act.

In *Blessington v. McCrory Stores Corp.*, 305 N.Y. 140, 111 N.E.2d 421 (1953), the New York Court of Appeals held that an action for breach of warranty was a contract action, and therefore governed by the statute of limitations for contract actions. The court explained that:

> [W]hile an action for breach of a statutorily implied warranty of fitness may involve, incidentally, some showing of negligence, the contract breached is not merely one to use due care, but is a separate (implied) *contract* of guaranty that the goods are fit for the purpose for which they are bought and sold.

*Id.,* 305 N.Y. at 147 (emphasis added). The court overruled two earlier cases where lower courts had held that breach of warranty claims sounded primarily in tort for statute of limitations purposes. *See Buyers v. Buffalo Paint & Specialties, Inc.,* 199 Misc. 764, 769–70, 99 N.Y.S.2d 713, 719 (Sup.Ct.Erie Co. 1950) (holding that "an action for consequential damages to property, whether the action is brought in contract or in tort, is an action for injury to property within the three-year statute of limitations"); *Schlick v. New York Dugan Bros., Inc.,* 175 Misc. 182, 183, 22 N.Y.S.2d 238, 239 (N.Y.City Ct.Kings Co. 1940) (holding that six-year contract statute of limitations did not apply, reasoning that "[a]n action to recover damages for personal injuries based on breach of warranty is only nominally based on contract"); *see also Great American Indemnity Co. v. Lapp Insulator Co., Inc.,* 282 A.D. 545, 545, 125 N.Y.S.2d 147, 148 (4th Dep't 1953) (recognizing that *Blessington* overruled *Buyers;* applying contract statute of limitations to breach of warranty claim).

Indeed, the decision in *Buyers* included a detailed analysis of the legislative history of GCL § 25–b, concluding that, while "injury to property" did not include pure contract actions, breach of warranty claims where consequential damages were claimed were not pure contract actions. *Buyers,* 199 Misc. at 770–76, 99 N.Y.S.2d at 720–25. This is precisely the argument Chase proposes now. But the Court of Appeals in *Blessington* disapproved *Buyers.* That rejection is buttressed by the decision in *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291, 392 N.Y.S.2d 409 (1977), a case involving a breach of an employment contract. The Court of Appeals reiterated the impact of *Blessington* on *Buyers:*

> Section 25—b of the General Construction Law ... specifically excepts from its definition injuries to property brought about by 'the breach of a contract'.... In [*Buyers* ], the court sought to determine whether two causes of action, one for breach of warranty and the other for negligence, were barred by the three-year Statute of Limitations. A key factor there was that the plaintiff sought, not 'restitution of the contract price', but consequential damages

for the injury to its buildings when the product, 'Ruf–Kote', manufactured by defendant and applied to the buildings by plaintiff, ignited and exploded. The [*Buyers* ] court accepted the reasoning that 'the term "breach of contract" ... must be deemed to refer only to ordinary breaches of contract for which the normal direct damages are sought, and not breaches which involve consequential damages to person or property' and held 'that actions for consequential damages to property are governed by the statute of limitations expressly applicable to such injuries, regardless of the form of the action'. The holding in [*Buyers* ], however, was effectively overruled in [*Blessington* ] with this court's recognition that an action for breach of an implied warranty of fitness for use may be related to, but is independent of, an action in negligence.

*Id.,* 41 N.Y.2d at 293, 392 N.Y.S.2d at 410–11 (second omission in original).

Subsequent appellate decisions also support the holding in *Blessington* that actions for breach of warranty are breach of contract actions excluded from the definition of "injury to property" irrespective of whether the damages are limited to recovery of the contract price or include consequential damages. In *McCarthy v. Bristol Labs.,* 61 A.D.2d 196, 197, 401 N.Y.S.2d 509, 510 (2d Dep't 1978), the court held that an action for breach of warranty alleging personal injuries was governed by the U.C.C. rather than CPLR 214(5), the three-year statute of limitations for "personal injury." The court held that an action for "personal injury arising from a breach of warranty[,]" was governed by the four-year statute of limitations for "breach of any contract." *Id.,* 61 A.D.2d at 199, 401 N.Y.S.2d at 511 (citing N.Y.U.C.C. § 2–725(1).). The court noted that U.C.C. § 2–715 provides that "[c]onsequential damages resulting from the seller's breach include ... (b) *injury to person or property* proximately resulting from any breach of warranty." (emphasis added). Accordingly, the presence of consequential damages did not alter the nature of the breach of warranty claim from one of contract.

GCL § 25–b itself was directly addressed in *Spring Mills, Inc. v. Carolina Underwear Co., Inc.*, 87 A.D.2d 524, 448 N.Y.S.2d 10 (1st Dep't 1982). The plaintiff had purchased fabrics from the defendant that were treated with certain flame retardant chemicals. When that chemical was banned by the Consumer Products Safety Commission the plaintiff sought to compel arbitration to resolve its claim for damages against the fabric seller. The defendant argued that the plaintiff's claims of injury to property were governed by the three-year statute of limitations for "damages for an injury to property." *Id.*, 87 A.D.2d at 525, 448 N.Y.S.2d at 11 (citing CPLR § 214(4)). The claims were characterized as "breach of contract and injuries to property" and "breaches of warranty and tortious conduct." *Id.* The court held that the action was governed by the U.C.C. rather than the CPLR provision for "damages for an injury to property" because the claims were excluded from the definition of "injury to property" under GCL § 25–b. *Id.*

■ In the present case, Chase argues that the fact that it seeks consequential property damages alters the nature of its breach of warranty claim so that it falls within the meaning of "injury to property" under GCL § 25–b. This argument has already been rejected by the New York courts which have found breach of warranty claims to be breach of contract claims even if consequential damages are sought. As discussed above, Chase's argument is the basis for the *Buyers* decision, a case squarely rejected by the Court of Appeals in *Blessington*. Moreover, there are no subsequent cases where GCL § 25–b has been interpreted to include breach of warranty claims where consequential damages to person or property are claimed.[2] Accordingly, this Court is satisfied that the New York Court of Appeals, if it addressed the issue, would hold that an ac-

tion for breach of warranty where consequential property damages are asserted is, nevertheless, a contract action. Consequently, because actions for breach of contract are not actions for "injury to property" pursuant to GCL § 25–b, such a breach of warranty claim is not an action for "injury to property." Therefore, the phrase "injury to property" in the Revival Act does not include actions for breach of warranty, regardless of whether such warranty claims include consequential damages to property. Chase's breach of warranty claims, therefore, were not revived by the Revival Act and remain time-barred as of four years from the date of delivery under U.C.C. § 2–725. Chase's breach of warranty claims are therefore dismissed.

### III.

T & N next argues that Chase's claim for fraud must also be dismissed as time-barred. T & N first argues that the Revival Act does not apply to fraud claims and that therefore Chase's fraud claim was not eligible to be brought in the one-year period provided by the Act. Second, T & N argues that the ordinary statute of limitations for fraud barred Chase's claims prior to the commencement of this action. The Court finds that Chase's claim for fraud would indeed have been time-barred because Chase should have discovered the alleged fraud more than two years before July 1, 1986. The Court also finds, however, that the Revival Act does apply to Chase's fraud claims for property damage and therefore Chase's suit commenced in June 1987, within the one-year period provided by the Revival Act, is not time-barred.

■ Under New York law, the statute of limitations for fraud runs until the later of six years from the commission of the alleged

---

**2.** Chase also argues that breach of warranty claims for consequential damages are not pure contract actions based on dicta in *Bulova Watch Co., Inc. v. Celotex Corp.*, 46 N.Y.2d 606, 610, 415 N.Y.S.2d 817, 819, 389 N.E.2d 130 (1979) ("[S]ince here [the plaintiff] asked only for recovery of the cost of the defective roof and not for any consequential damages, and therefore its warranty count is to be deemed one in contract alone, the cause of action arose at the time of the sale.") and *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 589, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97 (1978) ("[A] cause of action for breach of warranty is a contractual remedy[,] a remedy which seeks to provide the parties with the benefit of their bargain."). These cases do not address much less control the issue of whether breach of warranty claims including consequential damages cease to be contract actions within the meaning of GCL § 25–b.

fraud or two years from when, the alleged fraud was discovered or could have been discovered with reasonable diligence. CPLR §§ 203(g), 213(8); *see Ghandour v. Shearson Lehman Bros. Inc.,* 213 A.D.2d 304, 624 N.Y.S.2d 390 (1st Dep't 1995); *Plaza v. Estate of Wisser,* 211 A.D.2d 111, 118, 626 N.Y.S.2d 446, 451 (1st Dep't 1995); *Cruden v. Bank of New York,* 957 F.2d 961, 973 (2d Cir.1992). Part of the reasonable diligence with which a plaintiff is charged for purposes of triggering the two-year discovery period is a duty of inquiry as explained by the Court of Appeals for the Second Circuit:

> To determine when the fraud was or should have been discovered, New York courts apply an objective test. If the circumstances of the alleged fraud would "suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises...." When a plaintiff "shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him."

*Id.,* 957 F.2d at 973 (citations omitted); *see Scharff v. Claridge Gardens, Inc.,* No. 88 Civ. 2047, 1993 WL 287734, at *5 (S.D.N.Y. July 28, 1993) (Cannella, J.); *K & E Trading & Shipping, Inc. v. Radmar Trading Corp.,* 174 A.D.2d 346, 570 N.Y.S.2d 557 (1st Dep't 1991); *Waters of Saratoga Springs, Inc. v. State,* 116 A.D.2d 875, 498 N.Y.S.2d 196 (3d Dep't), *aff'd,* 68 N.Y.2d 777, 506 N.Y.S.2d 673, 498 N.E.2d 146 (1986). Whether a plaintiff should have discovered the alleged fraud is a mixed question of law and fact. *See K & E Trading,* 174 A.D.2d at 347, 570 N.Y.S.2d at 558. On a motion for summary judgment, a court should only find that the statute has run against a plaintiff where, based on the facts and circumstances, it appears conclusively that the plaintiff had knowledge of facts from which the fraud could reasonably be inferred. *Trepuk v. Frank,* 44 N.Y.2d 723, 725, 405 N.Y.S.2d 452, 453, 376 N.E.2d 924 (1978); *K & E Trading,* 174 A.D.2d at 347, 570 N.Y.S.2d at 558.

▮ In the present case, based on the undisputed facts, Chase should have investigated the alleged fraud long before July 1984, and therefore an action for fraud was time-barred before July 1, 1986. Chase's fraud claim is based on the allegation that T & N's agents told it that SLA was "non-toxic and was suitable and desirable for use as fireproofing [in One CMP]." (Am.Compl. ¶ 25.) Chase maintains that these representations were made "for the purpose of inducing Chase to rely thereon and to purchase and use, and to continue the application and use of, Sprayed Limpet Asbestos at 1 Chase Manhattan Plaza." (Am.Compl. ¶ 179.) With respect to knowledge of facts relating to this alleged fraud, Chase admits to learning of the 1972 OSHA regulations setting exposure limits for workers handling asbestos-containing building materials. (Pl.'s & Def.'s 3(g) Stmts. ¶¶ 26–27.) Chase also admits that Travelers Insurance Company recommended to it in July 1976 that employees working around asbestos dust be equipped with filtered face masks. (Pl.'s & Def.'s 3(g) Stmts. ¶ 28.) Chase admits receiving another letter from Travelers Insurance in 1980 recommending sealing of work areas and enforcing the use of respiratory protection where there might be asbestos exposure. (Pl.'s & Def.'s 3(g) Stmts. ¶ 42.) It is also undisputed that Chase took air samples beginning in 1976 and continuing through 1985. (Pl.'s & Def.'s 3(g) Stmts. ¶ 30.) Finally, it is undisputed that a Chase officer kept a copy of an article appearing in the New York Post on November 17, 1978 that referred specifically to the presence of asbestos-containing materials at One CMP and the fact that studies revealed asbestos to be a potential cancer-causing material. (Pl.'s & Def.'s 3(g) Stmts. ¶¶ 50–54.) There is also an undisputed admission that Chase knew of the potential health hazards of asbestos in the mid to late 1970s. (Def.'s 3(g) Stmt. Ex. 13.)

These undisputed facts demonstrate conclusively that Chase was aware of the presence of asbestos-containing materials at One CMP and aware of the apparent falsity of T & N's earlier representations as to the nontoxicity and safety of Sprayed Limpet Asbestos fireproofing. Chase does not allege it made any inquiry of T & N upon learning of the OSHA regulations, the safety recommendations by Travellers Insurance, or the press accounts of the dangers of asbestos present in One CMP. Furthermore, Chase itself admits knowing of the alleged dangers of as-

bestos in the mid to late 1970s. On these undisputed facts, it is clear that Chase possessed knowledge sufficient to raise a duty to investigate. *See Waters of Saratoga Springs,* 116 A.D.2d at 877, 498 N.Y.S.2d at 199 (duty to inquire where institution of Department of Health labelling requirement should have alerted plaintiff to possible contamination of bottled water); *Scharff,* 1993 WL 287734, at *5 (in fraud action for underpayment of gross rents, suspicions by plaintiff upon learning of low rental income reported by defendant raised duty to investigate).

Rather than contest the facts, Chase argues that under New York law the statute of limitations did not begin to run because Chase did not discover T & N's *scienter* and therefore, because Chase did not know all of the elements of fraud, the fraud was not discovered. This position confuses the requirement that scienter be pleaded and the duty to investigate for the purpose of triggering the statute of limitations for fraud. Under New York law, the test of whether a plaintiff should reasonably have discovered the fraud does not consider whether the plaintiff knew or should have known that the defendant was acting with scienter. The plaintiff need not have all the information necessary to draft a detailed complaint, but the plaintiff is under an obligation to inquire about the facts of which it knew or ought to have known. For example, in *Waters of Saratoga Springs,* the plaintiff had entered into a license agreement with the state of New York to bottle and market mineral water from wells located in a state park. In 1981, after consummating the licensing agreement, the plaintiff was informed by the Department of Health that warning labels were required on the bottles. In 1984 the plaintiff commenced an action against New York alleging that the state had made fraudulent representations with respect to the quality of the water to be bottled under the licensing agreement. *Id.,* 116 A.D.2d at 875–78, 498 N.Y.S.2d at 196–99. The court held that the plaintiff should have discovered such a fraud at the time the Department of Health imposed the labelling requirement—it was at that time the plaintiff "became aware of the alleged contaminated nature of the water"

and possessed knowledge of facts sufficient to suggest to a reasonable person the probability that he has been defrauded. *Id.,* 116 A.D.2d at 877–78, 498 N.Y.S.2d at 199. Because the duty to inquire arose at that time, the fraud claim was time-barred. *Id.* The court did not require that the plaintiff have knowledge of the state's scienter. Nor did the court hold that the plaintiff had knowledge of facts that related particularly to the defendant's knowledge of the falsity of the alleged misrepresentations.

Similarly, in *Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731 (S.D.N.Y.1988), no requirement that the plaintiff should have discovered the defendant's scienter was imposed to begin the statute of limitations for fraud. In *Rodgers,* the plaintiff had entered into a songwriter's agreement with the defendant, a recording company. The plaintiff claimed that the defendant underpaid his royalties and alleged both fraudulent inducement and fraudulent dispossession of the proper royalties. The court held the fraud claims were time-barred because the plaintiff reasonably should have discovered the fraud based on the royalty statements he received over time. The court found that the plaintiff "should have known that royalties were understated given plaintiff's apparent popularity [and] should have investigated the status of his royalties given the apparent discrepancy between the sale of millions of his songs and the veritable trickle of royalties flowing back to plaintiff." *Id.,* 677 F.Supp. at 737. The court did not indicate that the royalty statements raised an inference that the defendant was knowingly defrauding the plaintiff. The duty to investigate does not require that the plaintiff know the defendant is intentionally defrauding him—it assures that a plaintiff look into the discrepancies and determine the truth.

New York law does not require that the running of the statute of limitations for fraud await a plaintiff's discovery of the defendant's scienter, an element that must, however, be alleged in the complaint and proved at trial. *Cf. Monaco v. New York Univ. Medical Ctr.,* 213 A.D.2d 167, 623 N.Y.S.2d 566, 568 (1st Dep't 1995) (plaintiff's

discovery she had AIDS began statute of limitations for fraud claim against doctors for transfusion of contaminated blood where plaintiff had not alleged scienter). The statute will begin to run because "[w]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983) (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6 (1895)).

It is undisputed that Chase possessed knowledge of certain facts that would have suggested to a person of ordinary intelligence the probability that it had been defrauded, and Chase was under a duty to make inquiry about the statements now alleged to be fraudulent.[3] The Court finds that Chase had knowledge of such facts and was required to make such inquiry. Chase had knowledge of OSHA safety regulations, warnings from its insurance company, and the other facts set out above. Accordingly, Chase was under a duty to inquire upon learning of these facts, and the two-year statute of limitations began to run when this duty arose. Based on the undisputed facts, such a duty arose no later than the end of the 1970s, and therefore the fraud claims were time-barred no later than 1983.

■ Nevertheless, this does not end the inquiry because the Revival Act, if it applies to a claim for property damages based on fraud, would permit Chase to sue T & N for fraud during the one-year period from July 30, 1986 to July 30, 1987 as provided in the Act. Because this action was commenced within the one-year period provided by the Revival Act, the ultimate question, then, is whether the terms of the Revival Act include actions for fraud.

As was the case for warranty claims, this question has not been addressed directly by a New York State court. Nonetheless, the same provision of the Revival Act that *excluded* the claims for breach of warranty, does appear to *include* actions for fraud as actions that have been revived. As discussed above, the phrase "injury to property" as defined by GCL § 25–b includes any action lessening the value of the plaintiff's estate *except* actions for personal injury or breach of contract. Fraud does not fall within either exception and is therefore an action within the meaning of the phrase "injury to property." Thus, an action for fraud is revived by the Revival Act to the extent it lessens the value of the plaintiff's estate. This construction is supported by New York law. *See Massachusetts Mutual Life Ins. Co. v. Weinbach*, 635 F.Supp. 1460, 1462 (S.D.N.Y.1986) (Weinfeld, J.) (holding that the "expansive definition of injury to property [in GCL § 25–b] ... includes actions sounding in fraud."); *Primoff v. Duell*, 85 Misc.2d 1047, 1051, 381 N.Y.S.2d 947, 950 (Sup.Ct.N.Y.Co. 1976) ("An actionable fraud is an injury to property [under § 25–b].")

T & N argues that actions for fraud were not revived under the 1986 Toxic Tort Revival Act on the basis of a case interpreting a revival statute for silicone implant actions. *See Weissman v. Dow Corning Corp.*, 892 F.Supp. 510 (S.D.N.Y.1995) (Conner, J.). The court in *Weissman*, relying upon *Plaza v. Estate of Wisser*, 211 A.D.2d 111, 626 N.Y.S.2d 446 (1st Dep't 1995) (dealing with transmission of the HIV virus), interpreted the silicone implant revival statute, 1993 N.Y.Laws, ch. 419, to exclude actions for fraud, stating that:

> [W]e think that the New York Court of Appeals, were it to decide this issue, would follow the holding of Plaza and likewise determine that actions for fraud, even though personal injury results from the fraud, are not "actions for personal injury" under the meaning of the 1993 Revival Act.

---

3. This is not a case like *Friedman v. Meyers*, 482 F.2d 435 (2d Cir.1973), on which Chase relies. In that case, the defendant could not establish that the plaintiff had received certain information, and, even if she had, the papers did not reveal facts from which fraud could reasonably have been inferred. Here, T & N has demonstrated that Chase in fact had knowledge of facts from which the probability of fraud could reasonably be inferred.

*Weissman*, 892 F.Supp. at 515. The court recognized that *Plaza* interpreted the phrase "action for personal injury" to exclude actions for fraud, at least in the context of the statute of limitations. *See id.; Plaza*, 211 A.D.2d at 118, 626 N.Y.S.2d at 451 ("[S]ince the ameliorative provisions of CPLR 214–c are applicable only to actions to recover damages for personal injury or injury to property, they have no bearing on plaintiffs causes of action based on fraud.") The holding of *Weissman*, therefore, is that fraud claims do not fall within the phrase "personal injury" in the silicone implant revival act.

Notably, the silicone implant revival act only provides for revival of "[e]very cause of action for personal injury or death[,]" 1993 N.Y.Laws, ch. 419, and does not employ the phrase "injury to property." The holding in *Weissman*, therefore, does not address the issue presented by the present case. Furthermore, while dicta in *Plaza* indicates that fraud claims are not governed by the statute of limitations of CPLR § 214–c, a provision that includes both the phrases "injury to property" and "personal injury", *see Plaza*, 211 A.D.2d at 118, 626 N.Y.S.2d at 451, that comment did not in fact discuss the meaning of "injury to property" or GCL § 25–b. *Plaza* is not an interpretation of the one-year revival provision of the Toxic Tort Revival Act, nor is it an interpretation of GCL § 25–b. Accordingly, in light of the analysis of the Revival Act and GCL § 25–b, and the New York authorities discussed above, this Court finds that the New York Court of Appeals would hold that actions to recover property damage based on fraud are within the meaning of the phrase "injury to property" as used in the Revival Act. Chase's claims for fraud, therefore, although time-barred, were properly revived when brought in June 1987.

## IV.

T & N moves for summary judgment on both the negligence and strict liability claims on the grounds that Chase's own negligence is a bar to these actions.

New York abolished the doctrine of contributory negligence as a complete defense when the comparative fault provisions of CPLR § 1411 were adopted for all claims accruing after September 1, 1975. *See* CPLR §§ 1411, 1413; *see also Bankhaus Hermann Lampe KG v. Mercantile–Safe Deposit and Trust Co.*, 466 F.Supp. 1133, 1147 (S.D.N.Y.1979); *Binder v. Supermarkets General Corp.*, 49 A.D.2d 562, 563, 370 N.Y.S.2d 184, 186 (2d Dep't 1975). T & N argues that Chase's claims for strict liability and negligence "accrued" before September 1, 1975, and therefore, because the Revival Act revived the causes of action for strict liability and negligence, the defenses applicable to those causes of action when they accrued should be revived as well.

Chase responds that the Revival Act gave new life to previously time-barred claims for one year and that there is no indication that the Legislature intended to resurrect the disfavored bar of contributory negligence for such claims. Chase also reports it has learned of no case brought during the one-year revival period where the bar of contributory negligence was applied, whereas courts have in fact applied comparative negligence in such cases.

While the parties agree that there is no case that has addressed squarely the issue, the Court finds that contributory negligence is not a complete bar to a claim of negligence or strict liability revived under the Revival Act.[4]

In other contexts, provisions of law that would not necessarily have applied to partic-

---

4. The practice commentary to CPLR § 214–c indicates, without citing any authority, that claims which have already been dismissed on the grounds of contributory negligence are not eligible for revival:

> The revival legislation extends even to those causes of action that were brought in the past, but were then dismissed solely on the ground of the old date-of-injury rule. To put it another way, if the first action was dismissed on any

other ground, e.g., failure to state a cause of action, contributory negligence, etc., the action is not revived.

Practice Commentary, C214–c:6, Vol 7B McKinney's Cons.L. of N.Y., at 637 (1990). Nonetheless, the fact that a claim has been dismissed, and that dismissal has become final, and that such a claim is not revived does not establish what defenses are available to claims which plainly are revived under the Revival Act.

ular claims have been applied to claims revived under the Revival Act. In *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069, *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 338 (1989), the New York Court of Appeals adopted the doctrine of market share liability for cases alleging injury from exposure to diethylstilbestrol (DES) under the Revival Act. The market share theory would have been unavailable had a plaintiff brought a DES claim originally and the absence of such a theory may have led to the dismissal of a plaintiff's claim. For claims brought during the revival period, however, the new theory was made available. The Court of Appeals explained:

> Indeed, it would be inconsistent with the reasonable expectation of a modern society to say to these plaintiffs that because of the insidious nature of an injury that long remains dormant, and because so many manufacturers, each behind a curtain, contributed to the devastation, the cost of injury should be borne by the innocent and not the wrongdoers. This is particularly so where the Legislature consciously created these expectations by reviving hundreds of DES cases. Consequently, the ever-evolving dictates of justice and fairness, which are the heart of our common-law system, require formation of a remedy for injuries caused by DES.

*Hymowitz*, 73 N.Y.2d at 507, 541 N.Y.S.2d at 947, 539 N.E.2d at 1075 (citations omitted).

The logic of *Hymowitz* demonstrates that the New York Court of Appeals would be unlikely to compel the application of the long-abolished contributory negligence bar to revived asbestos exposure cases.

Revival of the contributory negligence bar would contravene the remedial purpose of the Revival Act. *Compare Besser v. E.R. Squibb & Sons, Inc.*, 146 A.D.2d 107, 113–114, 539 N.Y.S.2d 734, 737 (1st Dep't 1989). It would defy logic to interpret the Revival Act as a remedial measure that revives a cause of action but simultaneously renews the harshness of the contributory negligence doctrine—a doctrine that had been abolished in New York over a decade earlier. In the absence of any indication that the Legisla-

ture intended such a strained construction of the Revival Act, such an interpretation would be unreasonable. Moreover, while no court has squarely addressed this issue, comparative negligence has been applied to numerous revival act cases without challenge. *See, e.g., In re Joint Eastern & Southern Districts Asbestos Litig.*, 124 F.R.D. 538, 543 (E. & S.D.N.Y.1989) (Sifton, J.), *aff'd sub nom. Johnson v. Celotex Corp.*, 899 F.2d 1281, *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

Even if contributory negligence were the appropriate doctrine to apply, however, T & N has not adduced any evidence that Chase committed any act that would constitute such negligence and thereby provide T & N a complete defense. T & N contends that Chase's contributory negligence includes air monitoring begun in 1976, (Pl.'s & Def.'s 3(g) Stmts. ¶¶ 29–30), renovations between 1976 and 1986 that allegedly released asbestos fibers into the air at One CMP, (*see* Am.Compl. ¶ 176), and Chase's alleged noncompliance during the same period with certain government regulations. (Pl.'s 3(g) Stmt. ¶¶ 41, 59, 60.) Even assuming that no reasonable jury could find these acts were not negligent, *see MacDowall v. Koehring Basic Const. Equip.*, 49 N.Y.2d 824, 826, 427 N.Y.S.2d 617, 618, 404 N.E.2d 738, 739 (1980) (contributory negligence "is a jury question in all but the clearest cases"), T & N has failed to demonstrate that these acts were the proximate cause of Chase's injury, namely the installation of asbestos-containing material at One CMP. To sustain a defense of contributory negligence, T & N must establish that Chase's negligence was a proximate cause of its own injury. *See Basso v. Miller*, 40 N.Y.2d 233, 242, 386 N.Y.S.2d 564, 569, 352 N.E.2d 868, 873 (1976) (proximate cause of contributory negligence must be shown); *Spier v. Barker*, 35 N.Y.2d 444, 451, 363 N.Y.S.2d 916, 921, 323 N.E.2d 164, 169 (1974) ("[T]he doctrine of contributory negligence is applicable only if the plaintiff's failure to exercise due care causes, in whole or in part, the accident, rather than when it merely exacerbates or enhances the severity of his injuries."); *Lauretta v. Arredondo*, 344 F.Supp. 835, 837 (S.D.N.Y.1972) (contributo-

ry negligence must be a proximate cause of injury to bar recovery). T & N has not introduced any evidence of conduct by Chase occurring before or at the time of the installation of SLA at One CMP during 1959 and the early 1960s. Moreover, Chase's conduct from 1976 to 1986 cannot constitute contributory negligence with respect to the earlier installation of asbestos-containing fireproofing.

Accordingly, T & N has failed to offer any evidence that Chase's conduct could constitute contributory negligence. Therefore, T & N is not entitled to summary judgment dismissing Chase's claims for negligence or strict liability.

### V.

■ Alternatively, T & N seeks summary judgment on Chase's strict liability claim arguing that, in the circumstances of this case, strict liability and negligence are duplicative. Chase alleges both design defect and failure to warn under the claim for strict liability. (*See* Am.Compl. ¶¶ 39, 41.) Chase also alleges negligence. (*See* Am.Compl. ¶¶ 47, 50, 52.) T & N argues that the design defect and negligence actions are duplicative.[5] This view is contrary to New York law.

In *Voss v. Black & Decker Mfrs. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983), the Court of Appeals explained how negligence and strict liability for design defect differ:

> Strict products liability for design defect thus differs from a cause of action for a negligently designed product in that the plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product. The focus shifts from the conduct of the manufacturer to whether the product, as designed, was not reasonably safe.

*Id.*, 59 N.Y.2d at 107, 463 N.Y.S.2d at 401, 450 N.E.2d at 207. The court distinguished negligent design from design defect based on

the fact that strict liability imputes liability "to the manufacturer not on the basis of his negligence but because the product is not reasonably safe as it was designed." *Id.*, 59 N.Y.2d at 110, 463 N.Y.S.2d at 403, 450 N.E.2d at 209.

Therefore, under New York law Chase's claims for negligence and strict liability based on design defect are distinct causes of action and not duplicative.

### VI.

T & N moves for summary judgment on Chase's claim for restitution. Chase claims it is entitled to equitable restitution for the cost of abatement and removal of asbestos-containing material, a cost which in "equity and fairness is and ought to be borne by T & N...." (Am.Compl. ¶ 185.) Chase alleges that it "was compelled and will be compelled to undertake measures ... to protect the health of persons who use and occupy ... and the general public who frequent 1 Chase Manhattan Plaza" and that such measures "were and are immediately necessary to maintain 1 Chase Manhattan Plaza in a reasonably safe condition." (*Id.*)

■ New York has adopted the "emergency assistance doctrine" set forth in § 115 of the Restatement (First) of Restitution:

> A person who has performed the duty of another, by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if
>
> (a) he acted unofficiously and with intent to charge therefor, and
>
> (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

Restatement (First) of Restitution § 115. *See City of New York v. Lead Indus. Assoc., Inc.*, 190 A.D.2d 173, 177, 597 N.Y.S.2d 698,

---

5. In their reply papers, T & N raises for the first time the argument that the design defect claim should be dismissed because Chase has not presented any evidence of a safer alternative design. Because this argument was not addressed in T & N's moving papers, Chase had no occasion or opportunity to respond to it. Arguments for summary judgment cannot be raised for the first time in reply briefs. Therefore, the Court has not considered T & N's motion for summary judgment on this basis.

700 (1st Dep't 1993); *State of New York v. Schenectady Chems., Inc.*, 103 A.D.2d 33, 38–39, 479 N.Y.S.2d 1010, 1014 (3rd Dep't 1984); *City of New York v. Keene Corp.*, 132 Misc.2d 745, 747, 505 N.Y.S.2d 782, 784–85 (Sup.Ct. N.Y.Co.1986). Under New York's interpretation of § 115, a claim for restitution "does not require a duty on the part of plaintiffs." *Keene*, 132 Misc.2d at 750–51, 505 N.Y.S.2d at 787; *see Lead Indus.*, 190 A.D.2d at 177, 597 N.Y.S.2d at 700. Furthermore, a recovery is "limited to the reasonable costs for abatement, not necessarily the amount expended, and [do] not extend to future costs." *Keene*, 132 Misc.2d at 751, 505 N.Y.S.2d at 787 (quoting *Schenectady Chems.*, 103 A.D.2d at 39, 479 N.Y.S.2d at 1014); *see Lead Indus.*, 190 A.D.2d at 177, 597 N.Y.S.2d at 700.

T & N argues that Chase cannot satisfy the "immediately necessary" element of the emergency assistance doctrine because Chase has no plan to remove immediately or within the next five years all of the asbestos-containing materials at One CMP, (*see* Pl.'s & Def.'s 3(g) Stmts. ¶¶ 82, 86), and has no present intention to demolish One CMP thereby necessitating total removal of all asbestos-containing materials. (*See* Pl.'s & Def.'s 3(g) Stmts. ¶¶ 83, 84.) Chase contends that the fact that its abatement of asbestos fireproofing is continuing over a lengthy period and may not foreseeably include its complete removal is not a bar to its claim for restitution.

Chase is correct. At the very least, whether the steps Chase has taken and continues to take were immediately necessary is a question of fact very much disputed by the parties. While T & N may correctly maintain that Chase has represented an intention to leave some asbestos-containing materials in place, this fact alone does not compel the conclusion that whatever steps Chase did take were not immediately necessary. Moreover, Chase disputes T & N's conclusion that anything short of the immediate removal of *all* of the asbestos-containing material at One CMP cannot as a matter of law constitute action immediately necessary for public health and safety under the emergency assistance doctrine of § 115. These issues present genuine questions of material fact that

the trier of fact must resolve. *See Nat'l Railroad Passenger Corp. v. New York City Housing Auth.*, 819 F.Supp. 1271, 1280 (S.D.N.Y.1993) (Martin, J.) ("[T]he question of whether the removal was immediately necessary to protect the public is one fact which precludes summary judgment at this point."); *Independent School District No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286, 304 (D.Minn. 1990) (finding that "the hazard posed by the presence of the asbestos constitutes no less of an 'emergency' because abatement will require an extended amount of time, and has not yet been completed"); *Federal Reserve Bank of Minneapolis v. Carey Canada, Inc.*, No 3–86–185, 1988 WL 220489, at *3 (D.Minn. Aug. 31, 1988) ("[T]he fact that abatement is as of yet incomplete does not conclusively demonstrate the inapplicability of the [emergency assistance] doctrine."); *see also Caterair Int'l Corp. v. LCL Transit Co., Inc.*, No. 94 C 1049, 1995 WL 348045, at *7 (N.D.Ill. June 5, 1995) (delay between discovery and removal of contaminated soil presented genuine issue of material fact precluding summary judgment). *But see Corporation of Mercer Univ. v. Nat'l Gypsum Co.*, No. 85–126–3–MAC, 1986 WL 12447, at *9 (M.D.Ga. Mar. 9, 1986) (recognizing that Georgia did not adopt § 115, but even if it did, finding that plaintiff did not consider removal of asbestos to be immediately necessary where there was an undisputed delay between plaintiff's discovery of the hazard and beginning of removal).

Accordingly, T & N's motion for summary judgment with respect to the claim for restitution is denied.

### VII.

T & N also seeks summary judgment on Chase's claim for indemnity. Chase asserts that it "has discharged and continues to discharge T & N's duty to abate the hazardous conditions at 1 Chase Manhattan Plaza." (Am.Compl. ¶ 189.) Chase asserts that, due to T & N's alleged failure to perform its duty, and because of Chase's own "legal duty to all those who enter [One CMP] to exercise reasonable care and to maintain [One CMP] in a reasonably safe condition[,]" Chase is

entitled to indemnification from T & N. (Am.Compl. ¶¶ 188–89.)

Under New York law, "[i]ndemnity ... will be implied to allow one who [is] compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party." *Hanley v. Fox,* 97 A.D.2d 606, 606, 468 N.Y.S.2d 193, 194 (3rd Dep't 1983). In asbestos property damage cases, New York courts have applied § 76 of the Restatement (First) of Restitution, which states:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

*See Brooklyn Law School v. Raybon, Inc.,* 143 Misc.2d 237, 240, 540 N.Y.S.2d 404, 407 (Sup.Ct.N.Y.Co.1989); *City of New York v. Keene Corp.,* 132 Misc.2d 745, 746–51, 505 N.Y.S.2d 782, 784–87 (Sup.Ct.N.Y.Co.1986); *see also McDermott v. City of New York,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460, 463 (1980). In contrast to a § 115 claim for restitution under the emergency assistance doctrine, a claim for indemnity under § 76 requires only that the party seeking indemnity have an independent duty to discharge. *Keene,* 132 Misc.2d at 747, 505 N.Y.S.2d at 784–85. Absent from § 76 is any requirement that the act performed be immediately necessary for public health, decency, or safety. *Id.* Finally, under both the Restatement and New York law, wrongful conduct on the part of the party seeking indemnity is a bar to recovery. *See Hanley,* 97 A.D.2d at 607, 468 N.Y.S.2d at 194.

T & N argues that Chase's claim for indemnity fails for four reasons: (i) no imminent hazard is alleged; (ii) Chase was under no legal duty to remove the asbestos fireproofing; (iii) Chase waived any right to indemnification by acquiescing to the presence of the fireproofing and delaying its removal; and (iv) indemnity is inapplicable because Chase is partially at fault. None of these arguments is persuasive.

First, while a claim for indemnity does not by its terms require an emergency, *see* Restatement (First) of Restitution § 76; *see also Keene,* 132 Misc.2d at 747, 505 N.Y.S.2d at 784–85, courts which have approved the doctrine as a basis for recovery have referred to the existence of an "imminent hazard." *See Keene,* 132 Misc.2d at 747, 505 N.Y.S.2d at 784–85. Even if such an "imminent hazard" is required, for the same reasons explained above with respect to the existence of an emergency, whether an imminent hazard exists is a question of fact that precludes summary judgment on Chase's claim for indemnification. Second, Chase is under a common law duty to "all those who enter ... to exercise 'reasonable care under the circumstances whereby foreseeability shall be a measure of liability.'" *Brooklyn Law School,* 143 Misc.2d at 241, 540 N.Y.S.2d at 407 (quoting *Basso v. Miller,* 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868, 872 (1976)); *Nat'l Railroad,* 819 F.Supp. at 1280 (railroad's duty to protect employees and passengers from exposure to asbestos sufficient to support indemnity claim under § 76).[6] Third, T & N's contention that Chase has acquiesced and therefore waived any right to indemnification is based on a provision in § 95 of the Restatement of Restitution, a section upon which Chase does not rely.[7] In any event, whether Chase did ac-

---

6. Because the Court holds that Chase's common law duty as the owner of One CMP is a sufficient source of the duty to remove or abate the asbestos-containing material in the building, it is unnecessary to determine whether New York City Local Law 76 or the national emissions standards for hazardous air pollutants ("NESHAPS"), *see* 42 U.S.C. § 7412, *et seq.,* would, independently, provide such a duty. *See Keene,* 132 Misc.2d at 750, 505 N.Y.S.2d at 786.

7. Section 95 of the Restatement (First) of Restitution provides that:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other, or which, as between the two, it was other's duty to make safe, he is entitled to restitution from the other for such expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement (First) of Restitution § 95. At least insofar as the present lawsuit is concerned,

quiesce raises issues of fact in view of Chase's asserted asbestos removal plans. (*See, e.g.,* Pl.'s 3(g) Stmt. ¶¶ 56, 86, 87, 134(a).) Finally, T & N's argument that Chase's own fault bars its claim for indemnity under § 76 fails for the reasons already discussed with respect to contributory negligence. *See supra* part IV.

Accordingly, Chase has pleaded a claim for indemnity under § 76 and T & N has failed to offer any evidence that it is entitled to judgment on the indemnity claim as a matter of law.

## VIII.

Finally, T & N moves for summary judgment with respect to Chase's claim based on nuisance. Chase alleges that T & N is responsible for interfering with the safe use and enjoyment of One CMP with respect to persons who "use and occupy" the building as well as the general public who "frequent" it. (Am.Compl. ¶ 191.) T & N argues that Chase's nuisance cause of action fails to allege an invasion of Chase's property, and that T & N is therefore entitled to summary judgment.

■■■ There are two types of nuisance actions at common law in New York: public nuisance and private nuisance. An action for public nuisance must allege "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus. Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977) (citations omitted). A public nuisance is "an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency...." *State of New York v. Fermenta ASC Corp.,* 160 Misc.2d 187, 194, 608 N.Y.S.2d 980, 985 (Sup.Ct.Suffolk Co. 1994) (quoting *Copart,* 41 N.Y.2d at 567, 394 N.Y.S.2d at 172, 362 N.E.2d at 971). The

State has standing to bring actions for public nuisance as a matter of course in its role as "guardian of the environment." *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1051 (2d Cir.1985) (quoting *State of New York v. Schenectady Chems., Inc.,* 117 Misc.2d 960, 968, 459 N.Y.S.2d 971, 978 (Sup.Ct.Rensselaer Co. 1983), *aff'd as modified,* 103 A.D.2d 33, 479 N.Y.S.2d 1010 (3d Dep't 1984)). While ordinarily a private plaintiff may not maintain an action for public nuisance, *Copart,* 41 N.Y.2d at 567, 394 N.Y.S.2d at 172, 362 N.E.2d at 971, a private party may sustain such a claim if some special harm has been suffered different from the harm suffered by other members of the public. *See id.; Westwood Pharmaceuticals, Inc. v. Nat'l Fuel Gas Distrib. Corp.,* 737 F.Supp. 1272, 1281–82 (W.D.N.Y.1990).

■■■ Private nuisance, on the other hand, is a distinctly different cause of action. "In contrast [to public nuisance], one is subject to liability for a private nuisance where his or her conduct invades the private use of property." *Fermenta,* 160 Misc.2d at 194, 608 N.Y.S.2d at 985. Under New York law, "one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart,* 41 N.Y.2d at 569, 394 N.Y.S.2d at 172, 362 N.E.2d at 971 (citations omitted).

■■■ With respect to a claim for private nuisance, New York cases hold that where the source of the nuisance exists on the plaintiff's own property the requisite invasion is absent and no action for nuisance may be maintained. *See Drouin v. Ridge Lumber, Inc.,* 209 A.D.2d 957, 959, 619 N.Y.S.2d 433, 435–36 (4th Dep't 1994) (nuisance claims properly dismissed to extent diesel fuel contamination arose on plaintiff's own property; reinstating, however, nuisance claims based on contamination of surrounding land); *Rose*

Chase does not allege that Chase and T & N have become liable to third persons as a result of the presence of Sprayed Limpet Asbestos fireproof-

ing in One CMP. Consequently, no § 95 claim for restitution is made and T & N's argument with respect to acquiescence is inapplicable.

*v. Grumman Aerospace Corp.,* 196 A.D.2d 861, 862, 602 N.Y.S.2d 34, 34 (2d Dep't 1993) ("Because the injury complained of was to the same property as that on which the nuisance was alleged to exist, the plaintiff's nuisance cause of action should have been dismissed."). Where contamination invades the plaintiff's property from a source outside that property, then the requisite invasion occurs and a nuisance claim is viable. *See Nat'l Railroad,* 819 F.Supp. at 1278 (denying dismissal of nuisance claim for abatement and removal costs where asbestos flaked from defendant's buildings onto plaintiff's railroad tracks beneath the buildings).[8]

 In the circumstances of Chase's private nuisance claim, the alleged nuisance harming the plaintiff is present in the plaintiff's building itself. It is undisputed that Sprayed Limpet Asbestos, which constitutes the alleged nuisance, is present at One CMP. (*See* Pl.'s & Def.'s 3(g) Stmts. ¶¶ 12, 19, 23; Am.Compl. ¶ 27.) Chase does not allege any invasion of Sprayed Limpet Asbestos from any other building or property. Accordingly, given that there are no genuinely disputed issues of material fact that would allow Chase to sustain a claim for private nuisance, T & N's motion for summary judgment with respect to that aspect of Chase's nuisance cause of action is granted.[9]

 Chase does, however, set forth a claim for public nuisance because no invasion element is required for that cause of action. Chase asserts that T & N is responsible for the presence of the Sprayed Limpet Asbes-

tos at One CMP, a product alleged to constitute a potentially severe health hazard to members of the public. *See Shore Realty,* 759 F.2d at 1051 (threatened release of hazardous chemicals is public nuisance as matter of New York law). Chase also maintains that it incurred and will incur the cost of abatement and removal, and that these costs represent special damages different from the damages suffered by the general public. *See Westwood Pharmaceuticals,* 737 F.Supp. at 1281 (containment and clean-up costs costs are special damages sufficient for standing to assert public nuisance action). Accordingly, on the facts as alleged, and drawing all reasonable inferences against the moving party, Chase has asserted an action for public nuisance. Therefore, T & N's motion for summary judgment dismissing Chase's public nuisance claim is denied.[10]

### IX.

Accordingly, T & N's motion for summary judgment is granted in part and denied in part. T & N is granted judgment as a matter of law dismissing Chase's claims for breach of express and implied warranty and private nuisance. With respect to Chase's claims for negligence, strict liability, fraud, restitution, indemnity, and public nuisance T & N's motion for summary judgment is denied.

**SO ORDERED.**

---

8. Plaintiff's reliance on *German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 571 (S.D.N.Y.1995) is misplaced. *German* involved a class action for personal injuries by apartment tenants against the building owners alleging that the owners created a nuisance by exposing plaintiffs to unabated, uncontrolled lead paint. The nuisance claims were brought under various provisions of the New York Administrative Code § 17–142 and Multiple Dwelling Law §§ 78, 309. Judge Sweet explained that the plaintiff alleged an invasion " 'defined as an unlawful nuisance in violation of the New York City Administrative Code and Health Code.' " *Id.* (quoting the complaint). The defendant's motion to dismiss the nuisance claims was denied. This result, however, does not apply here since *German* involved a personal injury suit based on statutory nuisance violations rather than a property damage suit

based on common law private nuisance claims, as is the case here.

9. Because T & N is granted summary judgment on the private nuisance claim, the Court does not reach T & N's argument that Chase's contributory negligence bars such a claim.

10. T & N does not challenge the nuisance claim on the basis of the statute of limitations. Consequently, the Court does not consider whether the public nuisance claim would be time-barred or eligible for revival pursuant to the Toxic Tort Revival Act. *Cf. Jensen v. General Elec. Co.,* 82 N.Y.2d 77, 88, 603 N.Y.S.2d 420, 425, 623 N.E.2d 547, 552 (1993) (private nuisance claim is "injury to property" within context of CPLR § 214–c).